IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHING YE WONG and CHI KWONG LO,                    CV-08-937-ST

               Plaintiffs,                    OPINION AND ORDER

   v.

JANET NAPOLITANO, *et al.*,

              Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

      Plaintiffs, Ching Ye Wong and Chi Kwong Lo, filed this action on August 9, 2008,

seeking declaratory and mandamus relief to require defendants to grant their I-485 applications

for adjustment of status to "lawful permanent resident status" pursuant to § 245(a) of the

Immigration and Nationality Act ("INA"), 8 USC § 1255.  Defendants are the heads of the

1 - OPINION AND ORDER

various agencies that were responsible for processing  plaintiffs' applications (collectively

referred to as the United States Custom and Immigration Service ("USCIS")).  The USCIS

denied plaintiffs' applications on June 25, 2008.  Plaintiffs contend that the denial was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 USC §

706(2)(A).      This court has jurisdiction over plaintiffs' claims pursuant to 28 USC § 1331, the

Administrative Procedures Act ("APA"), 5 USC § 706, and the Declaratory Judgment Act,

28 USC § 2201(a).  All parties have consented to allow a Magistrate Judge to enter final orders

and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

The parties have filed cross motions for summary (dockets #36 & #38).  Plaintiffs ask the

court to declare defendants' decision in violation of the APA and order defendants to grant their

I-485 applications.  Defendants ask the court to dismiss plaintiffs' claims with prejudice.  For the

reasons that follow, plaintiffs' motion is GRANTED in part and DENIED in part, defendant's

motion is DENIED, and this matter is REMANDED to the USCIS.

## STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any

material fact and "the moving party is entitled to judgment as a matter of law."  The moving

party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317,

323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the

pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing

FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but

only [determine] whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F3d

1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is

'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted).

The APA provides for judicial review of final agency decisions. *See* 5 USC §§ 702, 706. Under the APA, a court may set aside an agency action, finding, or conclusion which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 USC § 706(2)(A). Under this standard, the court reviews an agency's interpretation of law *de novo*. *Schneider v. Chertoff*, 450 F3d 944, 952 (9th Cir 2006). Where the law is silent or ambiguous, the court may defer to an agency's reasonable interpretation. *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 US 837, 843 (1984). The court reviews an agency's factual findings for "substantial evidence." *Family Inc. v. US Citizenship and Immigration Servs.*, 469 F3d 1313, 1315 (9th Cir 2006). Under this deferential standard, the court may not substitute its own judgment for the agency's and may only reverse an agency's findings where the evidence presented would compel a reasonable finder-of-fact to reach a contrary result. *Id*.

///

///

///

3 - OPINION AND ORDER

## UNDISPUTED FACTS

The following facts are taken from the certified administrative record ("CAR") filed

under seal on December 9, 2008 (docket #11).

Plaintiffs are husband and wife.  CAR 137, 326.  Wong was originally admitted to the

United States on a multiple entry B-2 visitor visa on June 15, 1992.  CAR 333.  She was

admitted to the United States again as a B-2 visitor on August 8, 1993.  CAR 319, 333.  On

February 8, 1994, the Immigration and Naturalization Service ("INS")[1] approved her application

to change her status to that of an F-1 student, enabling her to attend Portland State University.

CAR 320-22.

After completing her studies, the INS granted Wong a change of status from her F-1 visa

to an H-4 visa as a derivative of an H1-B visa granted to her husband, Lo, valid from

December 1, 2000, through September 20, 2003.  CAR 288, 348.  A little more than one year

later, UNIPAK Designs, Inc., petitioned for an H-1B visa on Wong's behalf by filing a Form

I-129 petition.[2]  CAR 289.  The INS granted the change of status from the H-4 visa to her own

H-1B visa, effective February 7, 2002, through January 14, 2005.  *Id*.  Wong worked for

UNIPAK through September 2002.  CAR 391.

---

[1]  The Homeland Security Act of 2002, Pub L 107-296, 116 Stat 2135, § 471 (Nov. 25, 2002), abolished the INS and moved most of its functions to the new Department of Homeland Security ("DHS").  Within the DHS, most of the INS's former duties are now carried out by the USCIS.

[2]  Form I-129 serves several purposes in the context of "H" classifications.  First, it is an employer's petition to establish substantive eligibility for an H visa for a particular nonimmigrant alien.  *See* 8 CFR § 214.2(h)(2)(i).  Second, it serves as a request for an extension of stay for the affected nonimmigrant alien and, if approved, alters the date of expected departure as reflected on the most recent I-94 form, and, if previously present on another basis, it effects a change in status.  *See* 8 CFR § 214.2(h)(15)(i).  Although the petition is singular, the USCIS makes separate determinations on each issue.  *Id*.  Thus, it is possible for the USCIS to approve the petition but deny the extension of stay, *e.g.*, due to a violation of status.  In that case, the applicant would need to leave the United States and seek readmission on the approved H visa.

On September 12, 2002, another company seeking Wong's skill as a graphic designer, Asian/Pacific American Consortium on Substance Abuse ("APACSA"), filed an H-1B extension petition for Wong.  CAR 37-41.  Wong began employment after APACSA shortly after it filed the petition, but before the USCIS adjudicated the petition, as authorized by the American Competitiveness in the Twenty-First Century Act of 2000 ("AC21"), Pub L 106-313, § 105, 115 Stat 1251 (Oct. 17, 2000).

On March 12, 2003, the USCIS denied APACSA's petition because the position of graphic designer did not meet the "speciality occupation" requirement under the INA.  CAR 35. Accordingly, the USCIS also denied APACSA's request for an extension of stay and instructed that Wong must "depart from the United States by the date shown on the Form I-94."  CAR 36. At that time, Wong's most current I-94 required her to depart by January 14, 2005.  CAR 289. On April 15, 2003, APACSA timely appealed this decision to the Administrative Appeals Office ("AAO").  CAR 6-10.  On or about April 28, 2004, the AAO dismissed APACSA's H-1B appeal, affirming the USCIS's denial.  CAR 2-5.  Wong continued to work for APACSA through May 2004.  CAR 389.

On May 12, 2004, RX Direct (also known as Olson Institutional Pharmacy Services) filed an H-1B extension petition to employ Wong as a graphic designer.  CAR 290.  In its petition, RX Direct disclosed the APACSA petition as "pending" and "being appealed."  Mu Affidavit (docket #39-4), Ex. 3.  Wong began work at RX Direct in June 2004, and the USCIS approved the petition on July 21, 2004, effective July 21, 2004, through May 20, 2007.  CAR 290.  On December 19, 2005, RX Direct filed an I-140 petition for an immigrant visa on Wong's behalf, which the USCIS approved on January 25, 2006.  CAR 293.  The approved I-140 visa petition

categorizes Wong as a skilled worker or professional under 8 USC § 203(b)(3)(A)(i) or (ii), with

a priority date of June 15, 2005.  *Id.*  Thereafter, RX Direct petitioned for another extension of

Wong's H-1B visa on December 7, 2006, which the USCIS granted on February 28, 2007,

effective May 21, 2007, through May 10, 2010.  CAR 300.

On July 2, 2007, plaintiffs separately filed I-485 petitions for adjustment to lawful

permanent resident status pursuant to the approved I-140 petition.  CAR 253, 390.  The USCIS

issued a Request for Evidence ("RFE") to Wong on February 14, 2008, requesting evidence of

Wong's immigration status since she first entered the United States.  CAR 294-95.  The USCIS

later issued RFEs to both plaintiffs on May 23 and 29, 2008, requesting that they complete

certain responses on the Form G-325a (biographical information form) each had submitted.

CAR 247-48, 384-87.

The USCIS denied plaintiffs' applications for adjustment of status on June 25, 2008.

CAR 253-54, 390-93.  The USCIS denied Wong's petition pursuant to 8 USC § 1255(c)(8)

because it found she had accrued approximately a year and a half of unauthorized employment

by continuing to work for APACSA after the USCIS had denied APACSA's H-1B petition in

March 2003.  CAR 392.  The USCIS denied Lo's petition pursuant to 8 USC § 1183(d) because

it was derivative of Wong's status and thus dependent upon Wong's application.  CAR 253-54.

## LEGAL FRAMEWORK

### I.    H-1B Visa and Portability

The H-1B visa program takes its name from 8 USC § 1101(a)(15)(H)(i)(b), which sets

forth eligibility requirements for "specialty occupation" visas.  These visas are available to

nonimmigrant aliens who possess "theoretical and practical application of a body of highly

6 - OPINION AND ORDER

specialized knowledge" and have "attain[ed] . . . a bachelor's or higher degree in the specific specialty (or its equivalent)," and who are seeking temporary employment in the United States. 8 USC § 1184(i)(1).  The application must be made by the employer seeking to hire a nonimmigrant alien.  8 CFR § 214.2(h)(2)(i).

The putative employer first must seek certification of a labor condition application ("LCA") with the Department of Labor ("DOL").  8 CFR 214.2(h)(4)(i)(B)(1); 20 CFR § 655.705.  The LCA requires certain attestations concerning wages and working conditions, among other things, and is generally intended to protect the nonimmigrant alien from substandard wages and working conditions and to protect American workers from competition by cheaper imported foreign labor.  *See* 8 USC § 1182(n)(1).  The employer must submit the certified LCA to the USCIS along with a Form I-129 petition and supporting documentation concerning the immigrant's qualifications and the nature of the occupation being offered.  *See* 8 CFR § 214.2(h)(2)(i), (h)(4); 20 CFR § 655.705.  The USCIS reviews the petition to determine whether it is supported by an LCA, whether the occupation named in the LCA is a specialty occupation, and whether the qualifications of the nonimmigrant meet the statutory requirements for the H-1B visa classification.  20 CFR § 655.705(b).

An alien admitted pursuant to an H-1B nonimmigrant visa generally may be employed "only by the petitioner through whom the status was obtained."  8 CFR § 274a.12(b)(9). However, 8 USC § 1184(n)(1), as amended by the AC21, permits an alien already in a valid H-1B status to accept a position with a new employer upon the timely filing of a new, non-frivolous H-1B petition so long as, among other things, the alien "has not been employed without authorization in the United States before the filing of such petition."  8 USC § 1184(n).

The authorization to work for the new employer "continue[s] for such alien until the new petition

is adjudicated." *Id.*  But, "[i]f the new petition is denied, such authorization shall cease." *Id.*

## II.    Adjustment of Status

An alien admissible to the United States may apply for adjustment of status to lawful

permanent residence ("LPR") from within the United States if the alien is the beneficiary of an

approved immigrant visa petition and has an immigrant visa number immediately available.

8 USC § 1255(a).  Adjustment to LPR involves a three-step process.  First, a United States

employer applies to the DOL for a labor certification by showing (1) that there are no qualified

and willing American workers to fill the job and (2) that the alien's employment will not

adversely effect the wages and working conditions of American workers.  *See* 8 USC

§ 1182(a)(5)(A)(i).  Second, once the DOL has issued the labor certification, the employer then

files a Form I-140 Immigrant Visa Petition.  *See* 8 USC § 1154(a)(1)(F).  Approval of the visa

petition does not itself accord LPR status to the alien beneficiary; rather, approval of the visa

petition simply allows an alien to apply for adjustment of status.  *See* 8 USC § 1154(e).  Third,

the alien applies for adjustment to LPR status based on the approved immigrant visa petition.

*See* 8 USC § 1255(a).

However, 8 USC § 1255(c) sets forth several categories of aliens who are not eligible to

adjust status.  Subsections (2) and (8) are relevant to this case and provide as follows:

> [S]ubsection (a) of this section shall not be applicable to:
> . . . .
> (2) subject to subsection (k) of this section, an alien (other than an
> immediate relative as defined in section 1151(b) of this title or a special
> immigrant described in section 1101(a)(27)(H), (I), (J), or (K) of this title)
> who hereafter continues in or accepts unauthorized employment prior to
> filing an application for adjustment of status or who is in unlawful
> immigration status on the date of filing the application for adjustment of
> status or who has failed (other than through no fault of his own or for

> technical reasons) to maintain continuously a lawful status since entry into
> the United States;
> . . . .
> or (8) any alien who was employed while the alien was an unauthorized
> alien, as defined in section 1324a(h)(3) of this title, or who has otherwise
> violated the terms of a nonimmigrant visa.

8 USC § 1255(c)(2) & (8).

As is apparent from the text of these provisions, these categories are subject to several

exceptions, two of which have relevance to this case.  Subsection (c)(2) provides a limited

exception for an alien who has failed to maintain continuously a lawful status "through no fault

of his own or for technical reasons" ("no fault exception").  The USCIS has interpreted this

exception to apply in only four narrow circumstances.  *See* 8 CFR § 245.1(d)(2).  Second,

subsection (c)(2) is "subject to subsection (k)."  According to subsection (k), certain

employment-based adjustment applications, like Wong's, are eligible to waive the bar in 8 USC

§ 1255(c) if:  (1) the alien is present in the United States pursuant to a lawful admission and

whose adjustment of status application is based on being the beneficiary of an EB-1, EB-2, EB-

3, or EB-4 visa; and (2) the alien has not, for an aggregate period of more than 180 days since his

lawful entry into the United States, failed to maintain continuous lawful status, engaged in

unauthorized employment, or otherwise violated the terms and conditions of his admission.

8 USC § 1255(k).

The USCIS's regulations further define those categories of aliens who are restricted from

applying for adjustment of status under 8 USC § 1255, unless eligible for an exception:

> (6) Any alien who files an application for adjustment of status on or after
> November 6, 1986, who has failed (other than through no fault of his or
> her own or for technical reasons) to maintain continuously a lawful status
> since entry into the United States . . . .
> . . . .

(10) Any alien who was ever employed in the United States without the authorization of the Service or who has otherwise at any time violated the terms of his or her admission to the United States as a nonimmigrant . . . .

8 CFR § 245.1(b)(6) & (10).

## ANALYSIS

Plaintiffs contend that the USCIS's denial of their I-485 petitions was arbitrary and capricious and contrary to the law.  First, they argue that the USCIS incorrectly concluded that Wong failed to maintain lawful status by engaging in unauthorized employment, rendering her subject to the bar of 8 USC § 1255(c)(8).  Second, even if the USCIS correctly concluded that Wong failed to maintain lawful status, plaintiffs assert that the no fault exception provided by 8 USC § 1255(c)(2) applies and that Wong meets its criteria.  Finally, plaintiffs contend that if they are not entitled to relief as a matter of law, they deserve equitable relief in the form of estoppel against the USCIS.  This extraordinary measure is warranted, they argue, because the USCIS's mishandling of her more recent H-1B petitions prevented Wong from learning that she had accumulated a period of unlawful status while employed by APACSA and prevented her from correcting her immigration record prior to petitioning for an adjustment of status to LPR.

As discussed below, this court concludes that the USCIS correctly found that Wong failed to maintain her lawful status, but incorrectly failed to apply the no fault exception, and that Wong's estoppel argument lacks merit.

## I.    Continuous Lawful Status

The first issue is whether the USCIS incorrectly concluded that Wong failed to maintain continuous lawful status while working for APACSA.  This issue depends upon the correct interpretation of the H-1B portability provision enacted by the AC21.  Pursuant to 8 USC § 1184(n)(1), an alien granted a previous H-1B visa is authorized to begin working for a new

10 - OPINION AND ORDER

employer who has filed an H-1B visa on her behalf.  This "[e]mployment authorization shall continue for such alien until the new petition is adjudicated."  *Id*.  However, "[i]f the new petition is denied, such authorization shall cease."  *Id*.  The key issue is determining when a new H-1B petition has been "adjudicated" and "denied."

Plaintiffs argue that APACSA's H1-B extension petition was not "adjudicated" or "denied" for purposes of 8 USC § 1184(n)(1) until the AAO issued its final determination dismissing the appeal on April 28, 2004.  Until the appeal was dismissed, plaintiffs assert that Wong was permitted to continue working for APACSA because the petition was still being "adjudicated."  Under this reading, Wong did not accumulate over 180 days of unauthorized employment because RX Direct submitted an H-1B extension petition on Wong's behalf and Wong began working for RX Direct a little more than a month after the USCIS denied APACSA's appeal.  Thus, under 8 USC § 1255(k), her adjustment of status cannot be denied.[3]

Defendants counter that APACSA's extension petition was denied on March 12, 2003, when the USCIS issued its initial denial.  As a result, Wong accumulated over 180 days of unauthorized status and, thus, does not fit within the exception provided by 8 USC § 1255(k).  Her petition was therefore appropriately denied under 8 USC § 1255(c)(8).

---

[3]  Plaintiffs take this argument even further by contending that the denial under 8 USC § 1184(n)(1) is not effective until notice of that denial reaches the affected alien or at least within some "reasonable time."  Wong contends that she did not receive notice of the AAO's decision until after her I-485 petition was denied.  If this argument is accepted, she would have accumulated no period of unauthorized status.  Accordingly, plaintiffs maintain that they do not seek to benefit from the exception provided by 8 USC § 1255(k) for periods of unauthorized employment or status of less than 180 days because Wong accrued no period of unauthorized employment.  Plaintiffs cite no authority for this argument.  It is not necessary for this court to resolve this issue because, regardless of the answer, the result is the same.  If plaintiffs are correct, she would have accumulated no period of unauthorized employment.  If plaintiffs are wrong, a finding in Wong's favor on the interpretation of 8 USC § 1181(n)(1) would mean that Wong did not accumulate over 180 days of unauthorized employment.  Thus, she would be entitled to benefit from the 180-day exception under 8 USC § 1255(k) even if the clock began to run on the date of the AAO's decision denying her appeal.  Either way, Wong's I-485 petition could not be denied due to her accumulation of a period of unauthorized employment while working for APACSA.  Finally, a finding against plaintiffs on the construction of 8 USC § 1181(n)(1) would moot the issue entirely as it is undisputed that plaintiffs received timely notice of the initial denial over a year before Wong began work at RX Direct.  The only issue essential to Wong's claim is the construction of 8 USC § 1181(n)(1).

### A.    <u>Statutory Construction</u>

In construing a statute, a court has one aim:  to strive to understand and uphold "the intent of Congress in enacting [that] particular statute."  *United States v. Daas*, 198 F3d 1167, 1174 (9th Cir 1999), *cert denied*, 531 US 999 (2000).  "The first step in ascertaining congressional intent is to look to the plain language of the statute."  *Id* (citation omitted).  This does not mean the court simply contemplates the disputed text *in vacuo*; rather, the statute's context (or the position and function of that language in the entire statutory scheme) is of equal importance.  *Id*.  If the statute's meaning is evident, that "plain meaning" controls and "courts will look no further, unless its application leads to unreasonable or impracticable results."  *Id* (citation omitted).  To define terms, the court first looks to definitions provided by the statute; otherwise, the court gives terms their ordinary meaning.  *Id*.  Finally, "[i]f the statute is ambiguous . . . [,] courts may look to its legislative history for evidence of congressional intent."  *Id* (citation omitted).

Where "the intent of Congress is clear, that is the end of the matter."  *Chevron*, 467 US at 842.  But "[w]here a statute is ambiguous and thus admits more than one reasonable interpretation . . . [the court] must defer to the interpretation given by the agency charged with administering the statute."  *Lagandaon v. Ashcroft*, 383 F3d 983, 987 (9th Cir 2004), citing *Chevron*, 467 US at 842-43.

### B.    <u>The Statute is Ambiguous</u>

Critical to resolution of the first issue is the meaning of the term "adjudicated" and the phrase "petition is denied."  Neither the statute nor its related regulations define either of these critical terms.  To determine a word's plain and ordinary meaning, a court follows "the common practice of consulting dictionary definitions to clarify the[] ordinary meaning" of statutory

language.  *Johnson v. Aljian*, 490 F3d 778, 780 (9th Cir 2007) (citation, internal quotation marks omitted), *cert denied*, 128 S Ct 1650 (March 17, 2008).  "Adjudicated" is the past participle of the verb "adjudicate" which possesses several meanings, including:  (1) "to settle finally (the rights and duties of the parties to a court case) on the merits of issues raised;" (2) "to decide (as an interlocutory matter) arising prior to a final decision;" (3) "to make (a decision) final or interlocutory in the course of quasi-judicial proceedings;" or (4) "to pass judgment on." Webster's Third International Dictionary 27 (unabridged 1981) ("Webster's"). "Petition," of course, refers to the H-1B petition the new employer of a nonimmigrant worker filed that authorizes that alien to begin work.  "Denied" is the past participle of deny which has, in this context, the meaning:  "to turn down or give a negative answer to (a person) <hard to ~ an eager child>  <~*ing* petitioners>." Webster's 603.

Focusing purely on the term "denied," plaintiffs' argument lacks merit.  The March 12, 2003 notice of decision leaves no room for doubt that the USCIS had *turned down* APACSA's H-1B petition.  The first sentence reads:  "Upon consideration, it is ordered that your Petition for Nonimmigrant Worker *be denied* . . . ."  CAR 32 (emphasis added).  Thus, under a simple plain-meaning construction, the USCIS denied Wong's petition and, therefore, her authorization to work for APACSA ceased on March 12, 2003.

Focusing on the clause ending in "adjudicated," on the other hand, creates ambiguity in the meaning of the statute.  The  work authorization provided under the portability provision "*shall continue* . . . *until* the petition is adjudicated."  Because "adjudicated" can mean "to settle finally" on the merits, it is possible that Congress meant the work authorization continues until at least the AAO denial on appeal.  Yet "adjudicated" can also mean to make an interlocutory or non-final decision or simply "to pass judgment upon."  Under these latter definitions, the

13 - OPINION AND ORDER

USCIS's initial decision "adjudicated" Wong's application.  Because the plain meaning of the statute is capable of more than one plausible construction, it is ambiguous.

### C.    The USCIS's Interpretation is Not Entitled to Deference

The USCIS urges this court to defer to its interpretation.

> If . . . the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 US at 843 (footnote omitted).

However, *Chevron* deference presupposes that the agency has rendered an authoritative construction of the statute that has precedential effect on future determinations.  *See Lin v. U.S. Dep't of Justice*, 416 F3d 184, 189-190 (2nd Cir 2005) (refusing to accord *Chevron* deference to non-binding immigration judge decision where the agency was not bound by that decision in future cases).  The USCIS has issued no regulation implementing the provisions of the AC21.  Neither has it issued an interpretive memorandum or other agency ruling indicating its position of the date the portability work authorization ends.  Instead, the agency advances its position for the first time in this litigation.

An agency's interpretation of its own regulations advanced for the first time in litigation is "controlling unless plainly erroneous or inconsistent with the regulation."  *See Auer v. Robbins*, 519 US 452, 462 (1997) (citation, internal quotation marks omitted).  However, no deference is due "to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that 'Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and

enforcing statutory commands.'"  *Bowen v. Georgetown Univ. Hosp.*, 488 US 204, 212 (1988)

quoting *Investment Co. Inst. v. Camp*, 401 US 617, 628 (1971).  *See also Or. Natural Res.*

*Council Fund v. Forsgren*, 252 F Supp2d 1088, 1095 (D Or 2003), citing *United States v.*

*Trident Seafoods,* 60 F3d 556, 559 (9th Cir 1995) (The court "does not have to defer to the

agency . . . when the agency is merely advancing a litigation position rather than formulating an

official interpretation.").

There is no evidence that the USCIS's denial of Wong's I-485 petition even considered

the H-1B portability provision, much less provided or operated pursuant to an official agency

interpretation.  Had the USCIS adhered to the interpretation it now offers, it should have found

that Wong accumulated little more than one year of unauthorized employment measured from

the denial on March 12, 2003, to Wong's employment with RX Direct in June 2004.  Instead, by

finding that she had accumulated over a year and a half of unauthorized employment, it

considered Wong's entire period of employment with APACSA starting in September 2002 to be

unauthorized.  Given the lack of any formal agency position on this statute, whether through

regulation or guidance memorandum, and the evidence of conflicting treatment of the statute,

this court is not inclined to afford deference to the position advanced by the agency for the first

time in this litigation.  *Cf. Delgado v. Holder*, 563 F3d 863, 867 (9th Cir 2009) (single

unpublished opinion of Board of Immigration Appeals not entitled to *Chevron* deference);

*Gonzales v. Dep't of Homeland Security*, 508 F3d 1227, 1237-38 (9th Cir 2007) (internal

guidance memorandum entitled only to "some deference" and not full *Chevron* deference)

(citations omitted).

In the absence of a controlling agency interpretation, the court will look to the context of

the statute and analogous provisions of the INA in an effort to resolve the apparent ambiguity of

15 - OPINION AND ORDER

the statute.  *See Chevron*, 467 US at 843 (noting necessity of court imposing its own construction

of a statute "in the absence of an administrative interpretation").

### D.      Context of Statute Supports the USCIS's Interpretation

Both parties contend that the context of the INA requires an interpretation favorable to

them.  The court finds that the context favors the USCIS's interpretation.

First, Congress's use of different terms in separate sections of the AC21 suggests

"denied" does not mean the final denial on appeal.  Section § 106(b) of the AC21 amends 8 USC

§ 1184(g)(4) which imposes a six-year cap on the length of extensions of stay the beneficiary of

an H-1B visa may receive.  The amendment provides that if prior to the expiration of the cap, an

alien has had an I-140 or I-485 petition filed on their behalf that has been pending more than 365

days, the Attorney General must extend the stay of that alien in one-year increments "until such

time as a *final decision* is made on the alien's lawful permanent residence."  *See* Pub L No. 106-

313, § 106(b), 114 Stat 1251, 1254 (emphasis added).[4]  The USCIS has interpreted the use of

"final decision" to mean a final decision by the AAO.  *See* William R. Yates, Interoffice

Memorandum, *Interim Guidance for Processing Form I-140 Employment-Based Immigrant*

*Petitions and Form I-485 and H-1B Petitions Affected by the American Competitiveness in the*

*Twenty-First Century Act of 2000 (AC21) (Public Law 106-313)*, at 9 (May 12, 2005).  Congress

did not use the term "final decision" in § 105 of the AC21 (codified at 8 USC § 1184(n)) at issue

here, but instead provided that the alien's work authorization ceased when the petition was

"denied."  By using different wording, it must be assumed that Congress intended different

meaning.  *See SEC v. McCarthy*, 322 F3d 650, 656 (9th Cir 2003) ("It is a well-established canon

---

[4] Although not codified at 8 USC § 1184(g)(4), this amendment is found in the notes following the statutory text.

of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words.") (citing cases).

Congress's distinction between "final decision" in § 106 and until "the new petition is denied" in § 105 must be given effect. *See Stratman v. Leisnoi, Inc.*, 545 F3d 1161, 1168 (9th Cir 2008) (in construing statutes, a court must "attempt to give effect, if possible, to every clause and word of a statute") (citation, internal quotation marks omitted), *cert denied*, 129 S Ct 2861 (June 29, 2009); *Bosley Med. Inst., Inc. v. Kremer*, 403 F3d 672, 681 (9th Cir 2005) (noting that a court should "avoid, where possible, an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress.") (citation, internal quotation marks omitted). The use of different terminology in the same act is strong evidence that Congress intended different results from each provision. To interpret "denied" to mean "final decision" would ignore Congress's use of the latter term in the same act and would ignore Congress's choice not to use the same terminology for the work authorization provided by the H-1B portability provision.

Second, the appeal provision for H-1B petitions, which existed prior to Congress's enactment of 8 USC § 1184(n), indicates that "denied" refers to the agency's initial decision. It provides that "[i]f a petition is filed and denied under this subsection, the Attorney General shall notify the petitioner of the determination and the reasons for the denial and of the process by which the petitioner may appeal the determination." 8 USC § 1184(c)(7). It is presumed that Congress knew of this provision when it enacted 8 USC § 1184(n). *United States v. LeCoe*, 936 F2d 398, 403 (9th Cir 1991) ("Congress is, of course, presumed to know existing law pertinent to any new legislation it enacts.") (citation omitted). Thus, Congress was aware that petitions denied under the portability provision could appeal that determination, yet made no express

allowance for the work authorization enacted by the AC21 to continue as pending the result of that appeal. Reading such an allowance into 8 USC § 1184(n) would require this court to insert language that Congress omitted which is beyond the province of a court interpreting a statute. *Cf. Russello v. United States*, 464 US 16, 23 (1983) (noting that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation, internal quotations marks omitted). Also, the appeal provision uses "denied" in a similar fashion to 8 USC § 1184(n). *Compare* 8 USC § 1184(c)(7) ("If a petition *is . . . denied* under this subsection, the Attorney General shall notify the petitioner of the [determination, reasons for the denial, and appeals process].") (emphasis added) *with* 8 USC §1184(n) ("If the new petition *is denied*, such authorization shall cease.") (emphasis added). This similarity in language is weighty evidence that "denied" in 8 USC § 1184(n), as in 8 USC § 1184(c)(7), means the initial denial and not the decision on appeal.

Another section of the INA provides additional support. According to 8 USC § 1231(c)(1), a stowaway alien shall be removed immediately unless his "[asylum] application has not been adjudicated or whose asylum application has been denied but who has not exhausted all appeal rights." This provision suggests that Congress sometimes uses the term "adjudicated" to refer to the period before the initial denial and does not include subsequent appeals. Thus, if Congress wants a alien's status to continue during appeal, it knows how to say so explicitly.

Lastly, the USCIS's proffered interpretation is consistent with an analogous regulation applicable to H-class visas in effect prior to the enactment of the AC21. Pursuant to 8 CFR § 274a.12(b)(20), a nonimmigrant with an H-class visa whose status has expired, but who has

filed a timely extension of stay petition ("EOS"), may continue working for her employer for up to an additional 240 days while her petition is considered. However, if the EOS is denied prior to the expiration of that 240-day period, "the employment authorization . . . shall automatically terminate upon notification of the denial decision[.]" *Id*. Although the USCIS has promulgated no similar regulation for denials in the context of portable work authorizations, both this and the portability provision permit an employee to work while the USCIS is considering a new petition. The results should be consistent in both cases when those petitions are denied. As discussed above, such an interpretation is consistent with the available evidence of Congressional intent.

Plaintiffs counter by pointing to multiple regulations in other contexts as demonstrating that the USCIS either permits an employee to continue working despite an initial denial of the pertinent application or does not consider a denial final until all levels of review have been exhausted. As an example of the former, plaintiffs cite regulations that allows asylum seekers to receive an employment authorization document ("EAD") once their asylum petition has been pending for 180 days and to continue working in accordance with that EAD while their asylum application is pending administrative and judicial review. *See* 8 CFR §§ 208.7 & 274a.12(c)(8). Unlike H-class visa holders who are authorized to work for a specific employer incident to their status, applicants for asylum are not automatically entitled to work, but must seek an EAD in accordance with regulations promulgated by the USCIS. *See* 8 CFR § 274a.12(c)(8). The EAD is a separate application from the asylum petition, and USCIS regulations indicate that, once granted, the EAD may be renewed "in increments to be determined by the Commissioner" for "the continuous period of time necessary for the asylum officer or immigration judge to decide the asylum application and, if necessary, for completion of any administrative or judicial review." 8 CFR § 208.7(b). Moreover, even if the asylum application is denied, the

19 - OPINION AND ORDER

employment authorization can continue for some additional period of time depending upon the circumstances. *See id*. According to plaintiffs, this shows that the USCIS does not consistently interpret an employment authorization to cease upon the initial denial of an alien's petition.

Furthermore, whereas Congress does not favor asylum applicants, *see* 8 USC § 1158, the portability provision enacted by the AC21 was intended as a remedial provision to advance Congress's express intent to bring more foreign workers in the United States job market and relieve employees and employers from the burdens of long petition adjudication processes. *See* S. Rep. No. 106-260, at 1-2, 10-11 (April 11, 2000). Thus, plaintiffs assert, the USCIS's position that the initial denial terminates the employment authorization for ported H-1B aliens is irreconcilable with its permissive policy towards extending the less favored EADs throughout an asylum seeker's appeal process.

Plaintiffs also cite to amendments made to § 203 of the INA, 8 USC § 1153, by the Nursing Relief for Disadvantaged Areas Act of 1999, Pub L 106-95, 113 Stat 1312 (November 12, 1999) and its corresponding regulations. Under these provisions, an alien physician who, among other things, agrees to work in an area designated as having a shortage of health care professionals, may receive a national interest waiver ("NIW") of the DOL labor certification requirement. *See* 8 USC § 1153(b)(2)(B)(ii). Interim rules issued by the INS in 2000 indicate that the new provisions would be applied to NIW applications "pending adjudication as of November 12, 1999 before a Service Center, before the associate Commissioner for Examinations, or before a Federal court." 8 CFR § 204.12(d)(2). However, where "a prior Service decision denying a [NIW application] . . . became administratively final before November 12, 1999," the physician would need to "file a new Form I-140 petition" to benefit from the amendments. 8 CFR § 204.12(d)(6). In explaining this latter provision, the INS stated:

This restriction applies only if the denial became final before November 12, 1999. That is, if the petitioner had filed a timely appeal of the Administrative Appeals Office (AAO) which was still pending as of that date, or, if the AAO affirmed the denial but the petitioner had already sought judicial review by November 12, 1999, it will not be necessary to file a new petition. . . . If a case was pending before the AAO or a Federal court on November 1999, the Service will support remand of the case to the proper Service Center for a new decision in light of the new amendment.

65 Fed Reg 53889, 53891 (Sept. 6, 2000).

Plaintiffs point to these regulations as demonstrating that the USCIS treats the word "pending" to include all levels of adjudicative process up to and including consideration by a federal court and considers the term "denied" to mean only those denial decisions that have become "administratively final." As explained in its notice of interim rules for the Nursing Relief Act, the USCIS does not consider a denial to be administratively final so long as a timely appeal remains pending before the AAO or a federal court.

The provisions cited by plaintiffs are easily distinguishable. First, they consist of regulations adopted by the agency and are not examples of the use by Congress of the same or similar terms as those found in the H-1B portability provision. Second, the first regulation relating to asylum seekers deals with a problem wholly apart from employment-based visa petitions. EADs under CFR § 274a.12(c) are separate determinations from the alien's status determinations. Although the EAD continues while the asylum application is pending appeal, there no indication that an asylum seeker's work authorization would continue during an appeal from the denial of an EAD which is closer to the issue before this court. Third, the Nursing Relief Act addresses how the agency would handle the application of new remedial legislation to pending applications; it does not relate to the legal import of the agency's initial denial. Finally, none of the provisions cited by plaintiffs, in contrast to the other provisions discussed above,

21 - OPINION AND ORDER

were in effect at the time Congress enacted the AC21 or directly relate to H-class visa petitions and, thus, provide inferior evidence of Congressional intent.

Plaintiffs also argue that to the extent this court concludes that 8 USC § 1184(n) is ambiguous, it should be construed in their favor and against the USCIS because Congress enacted the AC21 as remedial legislation with the aim of providing "'[j]ob flexibility for long delayed applicants for adjustment of status to permanent residence.'" *Matovski v. Gonzales*, 492 F3d 722, 733 (6th Cir 2007), quoting AC21, § 106(c). Plaintiffs contend that this favorable construction is particularly pertinent where, nine years after passage of the AC21, the USCIS has failed to issue any regulations interpreting its provisions or indicated what constitutes a denial or at what precise point the authorization to work ceases under the H-1B portability provision. This has resulted in a lack of guidance for aliens when their prospective employer's H-1B petitions are denied. Without this guidance, plaintiffs argue, the USCIS should not be entitled to its preferred interpretation. However, this court's task in statutory construction is to discern the intent of Congress, not penalize the agency for failing to clarify ambiguities in the statute. Where the court may elucidate those ambiguities using normal interpretive tools, it must do so.[5]

In conclusion, based upon the relevant statutory context, 8 USC § 1184(n)(1) must be interpreted to mean that the work authorization provided by the H-1B portability provision ends when the USCIS initially denies the petition, notwithstanding the availability of an appeal process.

---

[5] *Matovski*, 492 F3d at 733 requires nothing else. There, the Sixth Circuit found that despite no formal delegation of authority by the Attorney General, nothing prevented Immigration Judges from adjudicating portability determinations under 8 USC § 1154(j) (enacted by AC21, § 106(c)). The court noted that the USCIS's "significant delay" in establishing formal regulations left petitioners without any method of establishing portability under the new provision; it did not hold that this delay meant it must necessarily rule in the petitioner's favor. Rather, like this court, it examined the pertinent statutory and regulatory provisions to reach its conclusion, concluding that the INA and Congressional intent in enacting the AC21 were contrary to the USCIS's position.

II.    **No Fault Exception**

Plaintiffs next contend that Wong is entitled to the benefit of the no fault exception of

8 USC § 1255(c)(2).  Wong asserts that she continued working for APACSA even after the

USCIS had initially denied its H-1B petition on the specific advice of her immigration attorney.

By following this advice, plaintiffs believe that Wong was not at fault for deciding to continue

working without authorization.  This presents the court with two issues:  does the no fault

exception apply to Wong, and does she meet its criteria?

    A.    **The No Fault Exception Applies to Wong**

Three bars to adjustment of status to lawful permanent residence, listed in the disjunctive,

are set forth in 8 USC § 1255(c)(2).  Subject to certain exceptions elsewhere in the statute, it bars

an adjustment of status for an alien "who hereafter continues in or accepts unauthorized

employment prior to filing an adjustment of status," or "who is in unlawful immigration status

on the date of filing the application for adjustment of status," or "who has failed (other than

through no fault of his own or for technical reasons) to maintain continuously a lawful status

since entry into the United States."  The final bar is the no fault exception.

The USCIS could have denied Wong's application based on unauthorized employment

under 8 USC §1255(c)(2).  However, it did not.  Instead, the notice of denial states on the first

page that it denied Wong's petition for adjustment of status under 8 USC § 1255(c)(8).  That

latter subsection provides that an alien is not entitled to adjust her status where she was

employed while she was "an unauthorized alien, as defined in section 1324a(h)(3) of this title, or

who has otherwise violated the terms of a nonimmigrant visa."  An "unauthorized alien" is

defined in 8 USC § 1324a(h)(3) as one "with respect to the employment of an alien at a

particular time, [who] is not at that time either (A) an alien lawfully admitted for permanent

23 - OPINION AND ORDER

residence, or (B) authorized to be so employed by this chapter or by the Attorney General."

Thus, the bar of 8 USC § 1255(c)(8) is indistinguishable from the employment-based bar of 8

USC §1255(c)(2), but, unlike the latter subsection, it does not include a no fault exception.

The USCIS has promulgated a regulation which clarifies the categories of 8 USC

§ 1255(c)(2) and (c)(8) by fully separating the employment-based bar found in both and the bar

for failure to maintain continuous lawful status found in subsection (c)(2) from the no fault

exception found in subsection (c)(2).  It provides that certain categories of aliens are "ineligible

to apply for adjustment of status to lawful permanent resident," including

> (6) Any alien who files an application for adjustment of status on or after
> November 6, 1986, who has failed (other than through no fault of his or
> her own or for technical reasons) to maintain continuously a lawful status
> since entry into the United States . . . ; [and]
> . . . .
> (10) Any alien who was ever employed in the United States without the
> authorization of the Service or who has otherwise at any time violated the
> terms of his or her admission to the United States as a nonimmigrant . . .

8 CFR § 245.1(b)(6) & (10).

According to this regulation, the no fault exception does not apply to aliens whose

petitions for adjustment of status are denied on the ground that they have accepted unauthorized

employment.  The USCIS submits that its interpretation is supported both by the separation of

subsections (c)(2) and (c)(8) and the use of the disjunctive conjunction "or" in subsection (c)(2)

between its three separate and distinct bars to adjustment of status.

Although this interpretation is reasonable, in practice its application is capricious.  By

definition, an alien who has accepted unlawful employment has failed to maintain continuous

lawful presence in the United States.  *See* 8 CFR § 245.1(d)(1)(ii).  This alien would fall within

the bars of both subsections (c)(2) and (c)(8).  The agency has recognized this to be the case.

24 - OPINION AND ORDER

*See* Donald Neufeld, Memorandum, *Applicability of Section 245(k) to Certain Employment-Based Adjustment of Status Applications filed under Section 245(a) of the Immigration and Nationality Act*, at 3 (July 14, 2008) (noting that "an alien in B-2 status who worked without authorization will also have violated a lawful status and failed to maintain continuously a lawful status.").

By choosing to cite only subsection (c)(8) to deny APACSA's petition, the agency arbitrarily precluded Wong from benefitting from the no fault exception.  The USCIS has failed to articulate any rational basis for placing Wong into subsection (c)(8) and not into the more favorable class in subsection (c)(2) to which the no fault exception applies.  The no fault exception demonstrates Congress's desire for those who have failed to maintain continuously a lawful status through no fault of their own to obtain relief from the bar against adjustment of status.  By continuing to work for APACSA after denial of its H-1B extension petition, Wong was no longer in lawful status.  8 CFR § 245.1(d)(1)(ii).  Because she maintains that this occurred through no fault of her own, she should have been given the opportunity to attempt to prove it.

The agency cannot withhold a benefit to which Wong is entitled by arbitrarily picking one of two possible bars to her adjustment of status. Thus, this court concludes that the USCIS erred by failing to consider Wong amenable to the no fault exception.

**B.    <u>Remand is Necessary</u>**

The next issue is whether Wong qualifies for the no fault exception.  The USCIS contends that she does not for three reasons.  First, the USCIS cites its regulation interpreting the no fault exception to apply in only four circumstances.  Second, it argues that Wong's evidence of no fault is inadmissible because it was not before the agency at the time it made its decision

25 - OPINION AND ORDER

on her adjustment of status petition.  Third, it asserts that Wong's evidence is insufficient as a matter of law to demonstrate she was not at fault for failing to maintain continuous lawful status. The court concludes that the USCIS's regulation is unreasonably narrow, but that this case must be remanded for further consideration under the proper standards.

### 1.    Agency Interpretation is Unreasonably Narrow

In 8 CFR § 245.1(d)(2), the USCIS limited the application of the no fault exception to only four circumstances:  (1) inaction of another individual or organization designated by regulation to act on behalf of an individual and over whose actions the individual has no control, if the inaction is acknowledged by that individual or organization; (2) a technical violation resulting from inaction of the USCIS; (3) a technical violation caused by the physical inability of the applicant to request an extension of nonimmigrant stay; and (4) a technical violation resulting from the USCIS's application of the maximum five/six year period of stay for certain H-1 nurses only if the applicant was subsequently reinstated to H-1 status.  Conspicuously absent from this list is an exception for reliance on advice of counsel.

The USCIS's construction of the exception at 8 USC § 1255(c) is impermissibly narrow. As discussed above, when construing the construction an agency's interpretation of a statute that it administers, the court first considers whether Congress has directly spoken to the precise question at issue.  *Chevron*, 467 US at 842.  If it has, Congress's intent controls.  If the statute is ambiguous, the court gives deference to an agency's reasonable interpretation of that statute by considering "whether the agency's answer is based on a permissible construction of the statute." *Id* at 843 (footnote omitted).

Congress did not define what circumstances fall within the no fault exception.  As this is a broad phrase capable of many potential meanings, it was proper for the USCIS to attempt to

26 - OPINION AND ORDER

give it a more definite meaning.  The question is whether its interpretation is permissible in light

of the Congressional intent expressed in the statute.  This court has previously concluded that it

was not.  *See Mart v. Beebe*, No. 99-1391-JO, 2001 WL 13624 (D Or Jan. 5, 2001) (rejecting the

USCIS's interpretation of the no fault and technical violation exceptions as set forth in 8 CFR

§ 245.1(d)).  The agency's construction improperly narrows the category of what may be

considered no fault or a technical violation by excluding other potential bases.  *See id*.  Given

that immigration law is nearly impenetrable for a lay person and at times is uncertain, a

reasonable and good faith reliance on the advice of counsel is a permissible basis for concluding

an alien was not at fault.  *See Alimoradi v. USCIS*, No. 08-2529 DDP (JCx) (CD Cal Feb 10,

2009) (finding reliance on counsel to be sufficient to establish amenability to the no fault

exception).

To be certain, not all reasons advanced by an alien should suffice to establish a lack of

fault.  To that end, a list of factors for the agency to consider in determining whether a no fault or

technical violation exists would be helpful.  However, limiting the no fault and technical

violation exception to only four circumstances does not maintain fidelity with Congressional

intent as manifested in the statute and is not a reasonable construction.  Wong should have been

given the opportunity to show that her reasonable reliance in good faith on the advice of counsel

rendered her without fault in accumulating a period of unauthorized stay.

///

///


## 2.    Development of Record Requires Remand

In reviewing agency action under the APA, "[t]he task of the . . . court is to apply the appropriate APA standard of review, 5 USC § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 US 729, 743-44 (1985). The scope of a court's review is limited to compelling "agency action unlawfully withheld or unreasonably delayed" and holding unlawful and setting aside agency action, findings, and conclusions based upon a finding that they are arbitrary and capricious, or otherwise deficient as described in 5 USC § 706(2). If the agency "made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *N.C. Fisheries Ass'n v. Gutierrez*, 550 F3d 16, 20 (DC Cir 2008) (citation, internal quotation marks omitted); *see also Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F3d 638, 654 (9th Cir 2007), *rev'd on other grounds*, *Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 129 S Ct 2458 (June 22, 2009) ("Under the APA, the normal remedy for an unlawful agency action is to 'set aside' the action . . . and remand to the agency to act in compliance with its statutory obligations.") (citation, internal quotation marks omitted).

"Generally speaking," a court "should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Ventura*, 537 US 12, 16 (2002). Adjustment of status under 8 USC § 1255(a) is placed firmly within the Attorney General's "discretion and under such regulations as he may prescribe." Thus, it is the USCIS's province, as the Attorney General's delegatee in administering the INA, to consider whether the facts of this case entitle Wong to adjust her status under the no fault exception as properly construed by this court.

This is particularly true here given the conflicting evidence submitted by Wong.[6]  Alex

Forte, the attorney representing APACSA during Wong's tenure there, states that after APACSA

received notice that its H-1B petition was denied in March 2003, Wong inquired whether she

was legally permitted to continue working pending appeal.  Forte avers:

> I recall advising her that continued employment authorization under the
> AC21 provisions while an H-1B petition was pending on AAO appeal had
> not been clearly addressed by Service regulation or memorandum.  It was
> my advice that the question remained unanswered as to whether
> employment authorization continued, depending on the determination as
> to when the petition was deemed "denied."  However, I also explained that
> there was a legal basis for concluding that the petition is not denied until
> the appeal is finalized.  A successful H-1B appeal would result in the
> issuance of an H-1B approval notice back dated for the original date of
> requested H-1B employment, not the appeal approval date, thus
> confirming that the H-1B period was a period of authorized stay and one
> allowing for employment authorization for the petitioner.

Forte Decl. (docket #39-3), ¶ 5.

In her second declaration,  Forte reiterates the complicated analysis she provided to

Wong in response to her inquiry:

> During the preparation of the appeal, Ms. Wong requested my opinion as
> to the likelihood of the success for the H-1B appeal and whether she was
> legally permitted to continue working for APACSA while the appeal was
> pending.  I recall giving her a very detailed analysis of the case based on
> the complicated provisions of the H-1B portability provisions under
> AC21. . . . I then spent some time discussing with her that while there was
> no Service regulation or memorandum so far clearly providing when the
> petition was "denied" to end the employment authorization under AC21,
> that there was a basis for arguing that the Service recognized that the
> period under which the H-1B was on appeal before the AAO could allow
> for employment authorization, consistent with AC-21 [*sic*] portability
> provisions.

---

[6]  The court considers this evidence for the limited purpose of showing that evidence exists that the agency failed to consider and identifying the potential issues that may be considered on remand.  *See Sw. Ctr. for Biological Diversity v. U.S. Forest Service*, 100 F3d 1443, 1450 (9th Cir 1996) (evidence outside the record may be considered for limited purpose of determining whether the agency ignored evidence relevant to its determination); *Animal Defense Council v. Hodel*, 840 F2d 1432, 1437 (9th Cir 1988) (same).

29 - OPINION AND ORDER

Second Declaration of Alexa Forte (docket #44-2), ¶ 4.

Forte adds that she "did not specifically advise Ms. Wong to stop working for APACSA while her appeal was pending with AAO." *Id*, ¶ 5.  However, Wong remembers the discussion at this meeting somewhat differently:

> During the meeting, my husband and I asked two or three times whether I could continue working for APACSA while the appeal was pending.  Each time, Ms. Forte answered "yes" affirmatively.

Wong Aff. (docket #39-2), ¶ 6.

It is apparent that there is ambiguity as to what exactly Forte told Wong.  Further factual development may resolve these ambiguities and shed further light on the reasonableness of Wong's reliance on Forte.  For example, given the complex nature of the legal issues, Wong may have reasonably misunderstood Forte or may have been forced to make a choice between two equally reasonable courses of action.

Remand is particularly appropriate where "'[t]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides.'"  *Ruiz-Vidal v. Gonzales*, 473 F3d 1072, 1080 (9th Cir 2007), quoting *Ventura*, 537 US at 17.  In *Ruiz-Vidal*, the court held that remand was not necessary under *Ventura* because the evidence at issue was already in the record and the agency had previously considered and ruled on the disputed issue twice.  Thus, nothing was left for the agency to do on remand, and the court could grant relief as a matter of law.  In contrast, the record concerning Wong's reasonable reliance on the advice from APACSA's attorney has not been developed; indeed, the agency has yet to consider this issue at all.  Under the circumstances, the agency entrusted with administering the INA must develop the record and

decide whether Wong's reliance on Forte's advice was reasonable and in good faith. The court's consideration of this issue in the first instance would "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." *Ventura*, 537 US at 16 (citation, internal quotation marks omitted). Therefore, this case must be remanded to the USCIS for further proceedings consistent with this Opinion.

## III.    Equitable Estoppel

Finally, plaintiffs seek to equitably estop the USCIS from denying their applications for adjustment of status. Equitable estoppel is available against government agencies in narrow circumstances. *Jaa v. INS*, 779 F2d 569, 571-73 (9th Cir 1986). The party asserting estoppel must first establish the four traditional elements:

> (1) The party to be estopped must know the facts;
> (2) He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;
> (3) The latter must be ignorant of the facts; and
> (4) He must rely on the former's conduct to his injury.

*Id* at 571.

In addition, the party must show affirmative misconduct by the government, beyond mere negligence and unexplained delays, which threatens to work a serious injustice and a lack of undue damage to the public's interest by the imposition of estoppel. *Id* at 572.

Plaintiffs argue that all these elements are met. According to plaintiffs, the USCIS knew at the time it approved RX Direct's H-1B visa that Wong had engaged in a period of unauthorized work, yet nevertheless approved the petition. Due to this error, Wong did not know about the period of unauthorized employment until it was too late. Had the USCIS denied RX Direct's petition in compliance with the governing law, she could have timely repaired her immigration history. She has suffered injury now that her I-485 application has been denied and

31 - OPINION AND ORDER

her family's life in the United States may be uprooted.  When the USCIS reversed its position

that Wong had engaged in unauthorized employment nearly four years after approving the RX

Direct H-1B extension position, she contends that it engaged in affirmative misconduct sufficient

to justify estoppel.  Finally, she argues that imposing estoppel against the government in this

case can have no impact on the public and would prevent a serious injustice against her and her

family.

The USCIS disputes Wong's factual contentions.  However, even if the court accepts

Wong's version of events, estoppel is unwarranted.  More than mere error or negligence is

necessary to justify estoppel against the government.  *Murkerjee v. INS*, 793 F2d 1006, 1009 (9th

Cir 1986).  For estoppel to apply, the USCIS's actions must rise to the level of affirmative

misconduct showing a  "a deliberate lie" or "a pattern of false promises."  *Id.*  The USCIS's

failure to discover or hold Wong's period of unauthorized employment against her until it

adjudicated her I-485 petitions was, at most, negligence.  Thus, equitable estoppel is not

available.

///

///

///

///

## **ORDER**

Plaintiffs' Motion for Summary Judgment (docket #38) is GRANTED in part as to the

USCIS's failure to apply the no fault exception in 8 USC § 1255(c)(2) and DENIED in part as to

Wong's failure to maintain her lawful status and the availability of equitable estoppel, and

defendants' Cross-Motion for Summary Judgment (docket #36) is DENIED.  This case is

REMANDED to the USCIS to reconsider plaintiffs' applications for adjustment of status under

8 USC § 1255 and Wong's amenability to the no fault exception at 8 USC § 1255(c)(2) in light

of this Opinion.

DATED this 10th day of March, 2010.

s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

33 - OPINION AND ORDER